UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CARLOS GONZALEZ,

        Petitioner,

    v.

MARY BERGHUIS,

        Respondent.

_____/

CASE NO. 2:08-CV-13306
JUDGE BERNARD A. FRIEDMAN
MAGISTRATE JUDGE PAUL J. KOMIVES


# REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION ........................................................................................ 2

II.   REPORT ............................................................................................................. 2
    A.    *Procedural History* ................................................................................ 2
    B.    *Factual Background Underlying Petitioner's Conviction* ................... 6
    C.    *Standard of Review* ............................................................................. 10
    D.    *Instructional Error/Addict Testimony (Ground 1)* ......................... 13
            1.    *Clearly Established Law* ................................................. 13
            2.    *Analysis* .......................................................................... 13
    E.    *Insufficient Evidence (Ground 2)* ..................................................... 15
            1.    *Clearly Established Law* ................................................. 15
            2.    *Analysis* .......................................................................... 17
    F.    *Admission of Prejudicial Evidence (Ground 3)* ............................... 18
            1.    *Clearly Established Law* ................................................. 18
            2.    *Analysis* .......................................................................... 20
    G.    *Ineffective Assistance of Counsel (Ground 4)* ................................. 21
            1.    *Clearly Established Law* ................................................. 21
            2.    *Analysis* .......................................................................... 22
    H.    *Prosecutorial Misconduct Claims (Grounds 5A – 5C)* .................... 25
            1.    *Suppression of Evidence (Grounds 5A & 5B)* .................... 25
                 a. Clearly Established Law ................................................. 25
                b. Analysis ........................................................................ 26
            2.    *Comments (Ground 5C)* .................................................. 28
                 a. Clearly Established Law ................................................. 28
                 b. Analysis ........................................................................ 28
    I.    *Recommendation Regarding Certificate of Appealability* ............... 29
            1.    *Legal Standard* ................................................................ 29

       2.    *Analysis* ............................................................................................. 31

  J.    *Conclusion* ................................................................................................. 31

III.     <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u> .......................................................... 32

\* \* \* \* \*

I.     <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus. This Court should also deny petitioner a certificate of appealability.

II.     <u>REPORT</u>:

A.    *Procedural History*

    1.     Petitioner Carlos Gonzalez is a state prisoner, currently confined at the West Shoreline Correctional Facility in Muskegon Heights, Michigan.

    2.     On February 16, 2006, petitioner was convicted of first-degree criminal sexual conduct, MICH. COMP. LAWS 750.520b(1)(f); second-degree criminal sexual conduct, MICH. COMP. LAWS § 750-520c(1)(c); and three counts of assault with intent to commit criminal sexual penetration, MICH. COMP. LAWS § 750.520g(1), following a jury trial in the Macomb County Circuit Court. On March 28, 2006, he was sentenced to concurrent prison terms of fifteen to thirty years for first-degree criminal sexual conduct, five to fifteen years for second-degree criminal sexual conduct, and five to ten years for each of the assault convictions.

    3.     Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

    I.     THE FAILURE TO INSTRUCT DEFENDANT'S JURY WITH A CAUTIONARY INSTRUCTION REGARDING ADDICT TESTIMONY IS REVERSIBLE ERROR BY DENYING HIM DUE PROCESS TO A FAIR TRIAL.

    II.    DEFENDANT IS ENTITLED TO A VACATED SENTENCE WHERE

THERE IS INSUFFICIENT EVIDENCE TO SUSTAIN THE VERDICT UNDER THE UNITED STATES CONSTITUTION.

III.     DEFENDANT IS ENTITLED TO A NEW TRIAL DUE TO THE TRIAL COURT'S ABUSE OF DISCRETION WHICH DEPRIVED DEFENDANT OF HIS DUE PROCESS RIGHTS IN ALLOWING PHOTOGRAPHS TO BE ADMITTED WHEN THE PROBATIVE VALUE WAS OUTWEIGHED BY ITS UNFAIR PREJUDICE.

IV.     DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AMENDMENT BY HIS COUNSEL'S FAILURE TO INVESTIGATE AND OBJECT TO THE INTRODUCTION OF INFLA[M]MATORY PHOTOGRAPHS, [AND BY HIS COUNSEL'S] FAILURE TO IMPEACH THE WITNESS' CREDIBILITY, CALLING [TO THE STAND] THE NURSE WHO TOOK THE PHOTOGRAPHS AND [WHO] WAS TOLD BY COMPLAINANT THAT THE INJURIES IN THE PHOTOGRAPH WERE SELF-INFLICTED.

V.     DEFENDANT WAS DEPRIVED OF A FAIR TRIAL AND DUE PROCESS OF LAW BY PROSECUTORIAL MISCONDUCT AND THE INEFFECTIVE ASSISTANCE OF COUNSEL.
     A)     THE PROSECUTOR FAILED TO DISCLOSE AND INTRODUCE THE RESULTS OF THE DNA TEST, AND THE FAILURE OF DEFENSE COUNSEL TO MOVE FOR PRODUCTION OF THE TEST RESULTS.
     B)     THE FAILURE OF THE PROSECUTOR TO DISCLOSE, AND DEFENSE COUNSEL TO TIMELY DEMAND, DISCOVERY OF POTENTIALLY DISCOVERABLE MATERIALS, INCLUDING THE TELEPHONE RECORDS OF THE COMPLAINANT, DRUG TEST RESULTS OF THE COMPLAINANT AND POLICE VIDEOTAPE.
     C)     DEFENDANT WAS DEPRIVED OF DUE PROCESS BY THE PROSECUTOR'S CLOSING ARGUMENTS WHICH IMPROPERLY IMPLIED THAT DEFENDANT WAS A DRUG DEALER.

VI.     DEFENDANT IS ENTITLED TO RESENTENCING BECAUSE OF INCORRECT SCORING OF PRIOR RECORD VARIABLE 1 AND OFFENSE VARIABLE 10 IN THE SENTENCE INFORMATION REPORT.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Gonzales*, No. 269631, 2007 WL 2712096 (Mich. Ct. App. 2007) (per

curiam).

4.      Petitioner, proceeding *pro se*, sought leave to appeal these six issues to the Michigan Supreme Court.  The Supreme Court, pursuant to MICH. CT. R. 7.302(G)(1), in lieu of granting leave to appeal, reversed in part the judgment of the Court of Appeals, vacated the sentence for first-degree criminal sexual conduct, and remanded the case to the Macomb County Circuit Court for resentencing under properly scored sentencing guidelines.  The court denied petitioner's application for leave to appeal regarding claims 1-5.  Justices Weaver and Corrigan dissented. *See People v. Gonzalez*, 480 Mich. 1150, 746 N.W.2d 303 (2008).

5.      On remand, the Macomb County Circuit Court resentenced petitioner to fifteen to thirty years confinement for first-degree criminal sexual conduct to be served concurrent with the other affirmed sentences.

6.      Petitioner appealed as of right to the Michigan Court of Appeals raising the claim that his  resentencing for first-degree criminal sexual conduct was improperly scored.  The court of appeals found no merit to petitioner's claim and affirmed his sentence.  *See People v. Gonzalez*, No. 286414, 2009 WL 2767312 (Mich. Ct. App. 2009) (per curiam).

7.      Petitioner, proceeding *pro se*, sought leave to appeal the resentencing claim to the Michigan Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People v. Gonzalez*, 485 Mich. 1081, 777 N.W.2d 198 (2010).

8.      Petitioner, proceeding *pro se*, filed a motion for reconsideration of leave to appeal the resentencing claim to the Michigan Supreme Court.  The Supreme Court denied the motion in a standard order.  *See People v. Gonzalez*, 485 Mich. 1132, 779 N.W.2d 515 (2010).

9.       Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on July 31, 2008.  As grounds for the writ of habeas corpus, he raises five claims for

relief:[1]

I. THE FAILURE TO INSTRUCT DEFENDANT'S JURY WITH A CAUTIONARY INSTRUCTION REGARDING ADDICT TESTIMONY IS REVERSIBLE ERROR BY DENYING HIM DUE PROCESS TO A FAIR TRIAL.

II. DEFENDANT IS ENTITLED TO A VACATED SENTENCE WHERE THERE IS INSUFFICIENT EVIDENCE TO SUSTAIN THE VERDICT UNDER THE UNITED STATES CONSTITUTION.

III. DEFENDANT IS ENTITLED TO A NEW TRIAL DUE TO THE TRIAL COURT'S ABUSE OF DISCRETION WHICH DEPRIVED DEFENDANT OF HIS DUE PROCESS RIGHTS IN ALLOWING PHOTOGRAPHS TO BE ADMITTED WHEN THE PROBATIVE VALUE WAS OUTWEIGHED BY ITS UNFAIR PREJUDICE.

IV. DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AMENDMENT BY HIS COUNSEL'S FAILURE TO INVESTIGATE AND OBJECT TO THE INTRODUCTION OF INFLA[M]MATORY PHOTOGRAPHS, [AND BY HIS COUNSEL'S] FAILURE TO IMPEACH THE WITNESS' CREDIBILITY, CALLING [TO THE STAND] THE NURSE WHO TOOK THE PHOTOGRAPHS AND [WHO] WAS TOLD BY COMPLAINANT THAT THE INJURIES IN THE PHOTOGRAPH WERE SELF-INFLICTED.

V. DEFENDANT WAS DEPRIVED OF A FAIR TRIAL AND DUE PROCESS OF LAW BY PROSECUTORIAL MISCONDUCT AND THE INEFFECTIVE ASSISTANCE OF COUNSEL.

A) THE PROSECUTOR FAILED TO DISCLOSE AND INTRODUCE THE RESULTS OF THE DNA TEST, AND THE FAILURE OF DEFENSE COUNSEL TO MOVE FOR PRODUCTION OF THE TEST RESULTS.

B) THE FAILURE OF THE PROSECUTOR TO DISCLOSE, AND DEFENSE COUNSEL TO TIMELY DEMAND, DISCOVERY OF POTENTIALLY DISCOVERABLE MATERIALS, INCLUDING THE TELEPHONE RECORDS OF THE COMPLAINANT, DRUG TEST RESULTS OF THE COMPLAINANT AND POLICE VIDEOTAPE.

C) DEFENDANT WAS DEPRIVED OF DUE PROCESS BY

---

[1] Petitioner includes a sixth claim asserting that he was entitled to resentencing under properly scored sentencing guidelines. However, petitioner concedes that "[t]his ground has been remedied in the Mi[chigan] Supreme Court." Pet'r's Br. 5. Thus, this Report does not address the sentencing claim.

THE PROSECUTOR'S CLOSING ARGUMENTS WHICH IMPROPERLY IMPLIED THAT DEFENDANT WAS A DRUG DEALER.

10.     Respondent filed her answer on February 9, 2009.  She contends that this Court must deny the writ of habeas corpus because: (1) petitioner expressed satisfaction with the jury instructions at trial, thus waiving its review; (2) the Michigan Court of Appeals found that sufficient evidence was presented at trial to sustain the verdict; (3) the admissibility of the evidence does not raise a constitutional question; (4) petitioner's counsel was not ineffective when he did not call for the testimony of the nurse who took photographs of the complainant; and (5) petitioner failed to object to the prosecutor's alleged misconduct at trial, thus waiving its review, and petitioner's counsel was not ineffective for failing to object to the prosecutor's conduct at trial.

11.     Petitioner filed a reply to respondent's answer on March 2, 2009.

B.      *Factual Background Underlying Petitioner's Conviction*

The factual background underlying petitioner's conviction was summarized in the supplemental brief filed by petitioner's counsel in the Michigan Court of Appeals:

> Prior to trial, on August 10, 2005, the complainant, Amber Dewey, was examined by registered nurse Renae Diegel at Turning Point, Inc.  During this examination the complainant told Renae Diegel that she had pain in her nose, lower back and abdomen area.  During this examination no photographs were taken of the complainant's alleged injuries.  On August 21, 2005, a different registered nurse, L. Jones, did follow-up photography of the complainant's alleged injuries.  The complainant appears to have told Ms. Jones that the abrasions were self inflicted.

Def.-Appellant's Supp. Br. on Appeal, in *People v. Gonzalez*, No. 269631 (Mich. Ct. App.), at 1.

Nurse Jones's note regarding the victim's account of her injuries states in pertinent part: "P[atien]t[] states abrasion caused by herself touching [illegible] bruising." Def.-Appellant's

Supp. Br. on Appeal, in *People v. Gonzalez*, No. 269631 (Mich Ct. App.), at Def.'s Exhibit C.

Petitioner's brief continues:

At trial, the complainant testified that she was staying in the home where the alleged incident occurred with Kenneth (Ken) Kruger and Anthony (Toni or Tony) Miller and had a relationship with one of the men, Ken, living at that home for several weeks prior to the alleged incident. She stated that she had met Defendant, who lived next door, three weeks prior to the alleged incident; that on that morning Ken and Tony had gone to work, leaving complainant, Defendant and Yvette (Eve) Anderson the only persons at home; that after the three had talked briefly in the living room, and after Defendant had suggested a game of strip poker, Eve went to sleep in one of the bedrooms. She further stated that after Eve had gone to bed Defendant came up behind her as she sat on the couch and grabbed her breasts, and that despite her protests, Defendant walked around her with his erect penis already exposed and eventually separated her legs, move aside her panties, and penetrated her vagina with his penis. She stated that Defendant then went into the bathroom and she sat confused on the couch; that Defendant made several more attempts to penetrate her but could not maintain an erection, and that Defendant also requested oral sex from her. The complainant testified that there were no threats of the use of violence with this request. The complainant testified that she had not consented to any of these acts, which lasted from about 9:30 a.m. to noon. The complainant further testified that following these events she telephoned her aunt and that her aunt accompanied her to the hospital.

On both direct and cross-examination, the complainant admitted that she had been a daily drug user, to wit: cocaine, during the three weeks she had lived at the house. However, she had lied about her prior drug use in district court, claiming it was because she did not want to be embarrassed in front of her family.

Yvette (Eve) Anderson testified that she, Tony, and Defendant were up all the prior night doing cocaine and drinking. She stated that at about 9:00 to 9:30 a.m. she was awakened by banging and crying, and when she looked out of the bedroom door she saw the Defendant stop the complainant holding her down. She stated that after approximately an hour it got quiet and she went home. According to police reports, Eve was passed out high on cocaine and probably did not see or hear anything.

Richard Schoenherr testified that when he saw Eve that morning at a friend's house she was drunk and scared.

The aunt, Ellen Farley, testified that she had talked on the telephone that day with the complainant at about noon and was told about these events, and that after she arrived at the scene she accompanied the complainant to the hospital and then to the police station.

Anthony Miller testified that he lived next door to Defendant and that the complainant had been living with him; that although he and the complainant were former cocaine abusers they had taken the pledge and had stopped using the drug

7

prior to the day of the alleged incident. He stated that other occupants and guests at the house the prior evening, including Eve and Defendant, had used the drug. He further testified that on the date of the alleged incident, he telephoned the complainant from work and talked with her while she waited for her aunt to come get her, and that he then confronted the Defendant who denied the allegations.

Nicole Schmidt, a forensic nurse examiner testified that she was present when the complainant was examined and a rape kit administered; that the complainant denied the use of illegal drugs; that while the complainant described areas of tenderness on her body there were no outward signs of trauma other than several small tears in the vagina which were consistent with the complainant's time frame. She stated that she was also present when the Defendant was examined and observed bruising on his right arm. The witness also identified photographs of this injury.

Detective Kevin Miller and police officer Dennis Duncan testified that they received permission to search Defendant's home, and they seized and photographed male clothing from Defendant's bathroom. Defendant's cell phone and cell records were searched. There were no weapons or drugs found at Defendant's house. They testified that Eve appeared at Defendant's house and said that she thought Defendant was in her home with a knife and that her friend has been raped by Defendant. Defendant was not found in Eve's home.

Police officer Paul LaBaere stated that he had contact with the complainant, who was accompanied by her aunt, at the rape trauma center and that a rape kit was administered; that the complainant was upset and had named Defendant as her assailant.

Police officers Joseph Tharrett and Jeff Plaunt testified that in regard to Defendant's arrest and videotaped statement, he appeared cooperative, candid and admitted to having consensual sex with the complainant, and that biological samples were taken from the Defendant.

Police officer Randall Shippy, an evidence technician, testified that he responded to Defendant's home and had seized male clothing; that he also tested several areas in the home where the alleged assaults took place but did not discover any semen or see any evidence of a struggle; and that he had also taken photographs at both homes.

Detective Thomas McMullen, the officer in charge testified that both Eve and the forensic nurse examiner had made reports on these events at about the same time. He further testified about the investigation and the interview he conducted with Defendant and state that the Defendant had admitted to numerous consensual sexual contacts with the complainant. The video tape of this interview was played for the jury.

At trial, Ms. Jones was not produced as a witness. However, the photographs were introduced showing severe injuries on the complainant, including abrasions. The jury was shown this prejudicial evidence but was not told by Defendant's attorney or the prosecutor that the complainant herself caused the injuries or even that during the first examination the complainant did not provide medical personnel information related to the injuries shown in the

photographs. At trial, Defendant requested that his attorney object to the introduction of the photographs, but Defendant's attorney did not do so. Defendant's attorney only informed the jury, regarding the photographs, that there were no photographs of any injuries to her nose or lower back to support her allegation of being punched in those areas.

DNA samples were taken, tested and compared before trial. However, the results of were never disclosed to Defendant or introduced into evidence at the time of trial. During trial, the following colloquy occurred:

MR. FREERS: Judge, my client has asked me to inquire of the prosecutor, even though Your Honor, I believe, has already ruled on it, that – she said it would take 30 days to get the DNA evidence. I just wonder if that evidence has ever been produced.

MS. OSTER: I have not received any response or any notification that it has been done. Like I told you at that time, it's –

THE DEFENDANT: That was back in December.

MS. OSTER: Right. And it takes approximately six months is what we have been told, so –

THE COURT: Yeah. It takes very, very long. To my knowledge, it's never been produced. And I don't have anything in my files to reflect that that has been produced.

THE DEFENDANT: She said 30 days. She was on her phone with her assistant that day

THE COURT: Talk to Mr. Freers about it. But I don't have any indication that it has been produced, Mr. Gonzalez.

Defendant did not testify.

In her closing argument, the prosecutor argued that the complainant hesitated before she contacted the police "because I'm hanging out with people that are doing drugs and with the drug dealer."

The trial court did not instruct the jury on prior inconsistent statement's involving the complainant's drug abuse.

Def.-Appellant's Supp. Br. on Appeal, in *People v. Gonzalez*, No. 269631 (Mich. Ct.

App.), at 2-7 (internal citations omitted).

The victim also testified that after the initial offense she "was confused, [she] just didn't

know what to do." Trial Tr., dated Feb. 9, 2006, at 26.  Additionally, the victim testified during

direct examination:

> QUESTION:  Okay.  Now, did you ever call anyone on the cellphone when you were with Carlos between the time that the guys left for work and the time that Carlos left?
>
> ANSWER:    Not that I recall, no.
>
> Q:         Okay. And –
>
> A:         I had received a phone call.
>
> Q:         Who did you receive a phone call from?
>
> A:         I received a phone call from one of the workers that was helping me because I had a premature baby and they were helping me.
>
> Q:         Okay. Do you remember who this person was?
>
> A:         No, I don't.
>
> Q:         Okay. Did you tell this person, you know, Help, I'm – I'm in trouble.  Somebody is raping me right now?
>
> A:         No, because he was standing right there.  I wasn't going to get sliced up or anything.  He was standing right there.
>
> Q:         Okay. Now, did he threaten to slice you up?
>
> A:         No.  But look what he had just done to me.  He was able – he could have done anything to me.  I didn't know what to think.

Trial Tr., dated Feb. 9, 2006, at 51-52.

Before deliberations, the court instructed the jury that it was to determine the credibility

of the witnesses by taking into account the totality of the evidence. Trial Tr., undated Feb. 15,

2006, at 69-71.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed

by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's

decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Instructional Error/Addict Testimony (Ground 1)*

Petitioner first contends that the trial court erred by not issuing a cautionary instruction to the jury concerning the testimony of a drug addict.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws).  Thus, in order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair.  *See Estelle*, 502 U.S. at 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal).  As the Supreme Court noted in *Estelle*, the Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'"  *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

2.      *Analysis*

No clearly established law exists governing the claim that a trial court's omission of an instruction to view an addict-informant's testimony with caution renders a trial fundamentally

unfair. Previously, the Sixth Circuit has acted consistently with the Fourth Circuit's approach to the issue in *United States v. Howard*, 590 F.2d 564, 570 (4th Cir. 1979) by not recognizing error in the absence of evidence that the witness was addicted at the time of trial. *See Scott v. Mitchell*, 209 F.3d 854, 882 (6th Cir. 2000). The Sixth Circuit has found that a cautionary instruction regarding the credibility of an addict-informer is necessary when the record is "devoid of any evidence" that would corroborate the addict-informer's testimony. *United States v. Griffin*, 382 F.2d 823, 826 (6th Cir. 1967). However, in *Scott* the Sixth Circuit stated that:

> "This court has long recognized the importance of an addict-informant instruction in appropriate cases." *United States v. Brown,* 946 F.2d 1191, 1195 (6th Cir.1991). However, there is no per se rule requiring such instructions to be given in all cases involving addict testimony; instead, "the need for such an instruction depends on the circumstances of each case." *Id.* (internal quotation omitted). The district court errs by failing to give a requested instruction only when the requested instruction is correct, not substantially covered by the actual jury charge, and when not giving the instruction would substantially impair defendant's defense. *See United States v. Sassak,* 881 F.2d 276, 279 (6th Cir.1989).

*Scott*, 209 F.3d at 883.

Petitioner asserts that he was denied a fair trial because the court failed to instruct the jury to view the testimony of an addict-informer with caution. However, petitioner fails to show that he was prejudiced by the omission of such instruction.

The victim testified during direct examination that she had used cocaine. Furthermore, the jurors were instructed that they were to determine the credibility of witnesses and the importance of their testimony; they were specifically to consider "[i]n general, does the witness have any special reason to tell the truth or any special reason to lie[]", Trial Tr., dated Feb. 15, 2006, at 70-71; and that they were to disregard testimony that they did not believe was credible considering the totality of the evidence. The jurors knew that the victim had used drugs. The

court instructed them to consider the totality of the evidence when evaluating the credibility of witnesses' accounts. In these circumstances, there is not a reasonable probability that the jury would have come to a different conclusion had an addict-informant instruction been given. *Cf. Krist v Foltz*, 804 F. 2d 944, 947 (6th Cir. 1986) (defense counsel's failure to request an accomplice instruction "insignificant" where the witness's "unsavory past and his motive for naming the defendant as his companion in crime were fully developed by counsel on cross-examination."); *Blount v. Battaglia*, 188 Fed. Appx. 515, 519 (7th Cir. 2006); *Green v. Ludwick*, No. 07-CV-10828, 2009 WL 1639742, at *1, *9 (E.D. Mich. June 10, 2009) (Steeh, J., adopting report of Komives, M.J.); *Grant v. Rivers,* 920 F. Supp. 769, 784 (E.D. Mich. 1996) (Gadola, J.).

In sum, the trial court's omission of a separate concurrent jury instruction to treat the testimony of a "drug addict" with caution did not render the petitioner's trial fundamentally unfair. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.    *Insufficient Evidence (Ground 2)*

Petitioner next contends that the prosecution presented insufficient evidence to establish his guilt beyond a reasonable doubt. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.    *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution,

*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). However, under the amended version of § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision. Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

It is well-established that a reviewing court, whether on direct appeal or habeas review, "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United State v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *Walker v. Russell*, 57 F.3d 472, 475-76 (6th Cir. 1995); *see also*, *United States v. Bailey*, 444 U.S. 394, 424-25 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story."). "The fact that the testimony is contradictory does not mean that evidence is insufficient, only that the jury must make credibility determinations." *Government of the Virgin Islands v. Isaac*, 50 F.3d 1175, 1179 (3d Cir. 1995). It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution. *See Jackson v. Virginia*, 443 U.S. 307, 326 (1979); *United States v. Sherwood*, 98 F.3d 402, 408 (9th Cir. 1996).

Further, Michigan law explicitly provides that "[t]he testimony of a victim need not be corroborated in prosecutions under [the criminal sexual conduct statutes]." MICH. COMP. LAWS § 750.520h. Thus, "[i]t is a well established rule that a jury may convict on the uncorroborated evidence of a CSC victim." *People v. Lemmon*, 456 Mich. 625, 642 n.22, 576 N.W.2d 129, 137 n.22 (1998). This rule comports with the more general rule in sufficiency of the evidence cases that the testimony of the victim standing alone is sufficient to convict a defendant beyond a reasonable doubt. *See*, *e.g.*, *United States v. Mejia*, 909 F.2d 242, 245 (7th Cir. 1990); *Holderfield v. Jones*, 903 F. Supp. 1011, 1017 (E.D. La. 1995). "Even in the face of inconsistent evidence, a victim's testimony alone can be sufficient to support a guilty verdict." *United States v. Kenyon*, 397 F.3d 1071, 1076 (8th Cir. 2005).

2.    *Analysis*

In his habeas petition and reply brief, petitioner argues that there was no clear evidence of a struggle between him and the victim. Petitioner further asserts that the victim testified that there were no threats or use of violence during the incident. Consequently, the evidence was insufficient to support a conviction.

Petitioner's argument is without merit. The lack of clear signs of a struggle at the scene was brought to the jury's attention, and the jury nonetheless believed the victim's account of a struggle during the incident. Further, the victim's testimony that petitioner did not use threats or violence only went to petitioner's requests for oral sex. This testimony did not relate to the issue of the prior forced vaginal penetration. As the victim testified when questioned about petitioner's requests for oral sex, "[petitioner] had already forced the other stuff." Trial Tr., dated Feb. 9, 2006, at 88. As noted above, it is the function of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence. This Court must presume that, by finding the

petitioner guilty, the jury resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326; *Sherwood*, 98 F.3d at 408.

Petitioner also argued in the state courts that the evidence was insufficient to establish a struggle between petitioner and the victim. The Michigan Court of Appeals rejected this claim, reasoning that the victim testified that she told petitioner to stop touching her breast. He continued to do so and then forcibly penetrated her with his penis. Further, a witness testified that she saw the petitioner and the victim struggling, and that it appeared that the petitioner was hurting her. The incident scared the witness causing her to lock herself in a bedroom. As the court of appeals noted, "[t]his evidence was sufficient enough to enable the jury to find that the sexual activity was not consensual." *Gonzalez*, 2007 WL 2712096, at *2.

The appeals court's conclusion was reasonable. Michigan law explicitly provides that the uncorroborated testimony of a criminal sexual conduct complainant is sufficient to sustain a conviction. MICH. COMP. LAWS § 750.520h. Here, the victim's testimony was corroborated by a witness. Despite petitioner's contention that the evidence of a struggle was insufficient, any rational trier of fact could have concluded that the victim's testimony, corroborated by a witness, was sufficient to establish beyond a reasonable doubt that a struggle occurred. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his sufficiency of the evidence claim.

F.     *Admission of Prejudicial Evidence (Ground 3)*

Petitioner next contends that the trial court erred by admitting prejudicial evidence. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.     *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in

the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws."). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, and issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994). In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a court grant habeas corpus remedy." *Barrett v. Acevado*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right—such as the right to confront witnesses or to present a defense—is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

2.      *Analysis*

Petitioner contends that he was denied a fair trial by the admission into evidence of prejudicial photographs. The photographs were of the victim depicting injuries she had allegedly received during the offense. Petitioner asserts that the victim's depicted injuries were self-inflicted; thus, the photographs unfairly prejudiced him.

The Michigan Court of Appeals found no merit to this claim, reasoning that the photographs were used to show that the victim suffered physical injury during the incident, and that they were relevant to the issue of whether petitioner used force. *See Gonzalez*, 2007 WL 2712096, at *2. Contrary to petitioner's claim that the victim's injuries were self-inflicted, the note written by the nurse who took the photographs stated that the victim indicated she had caused some abrasions by touching the bruises. *See id.* The note did not state that all the depicted injuries were self-inflicted. *See id.* Furthermore, defense counsel used the photos both to establish that some of the victim's injuries were not caused by petitioner and to elicit testimony to cast doubt on the medical certainty that any injuries were caused by the petitioner. *See id.* Consequently, petitioner had a fair opportunity to cast doubt upon the probative value of the photographs. As noted above, habeas relief based on allegedly erroneously introduced evidence is only available if such evidence "is totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot*, 463 U.S. at 899. Thus, petitioner's claim that this evidence was prejudicial does not present a constitutional question in light of the fact that petitioner had a fair opportunity to and, in fact, did attempt to cast doubt on this evidence.

As noted by the court of appeals, petitioner did not demonstrate that the photographs were admitted into evidence in error because their probative value was outweighed by their

unfair prejudice. "The admission of relevant photographs of a crime scene or victim, even if gruesome, does not deprive a criminal defendant of a fair trial." *Skrzycki v. Lafler*, 347 F. Supp. 2d 448, 455 (E.D. Mich. 2004) (Gadola, J.); *see also*, *Gerlaugh v. Stewart*, 129 F.3d 1027, 1032 (9th Cor. 1997) (admission of gruesome photographs generally does not "raise[] the specter of fundamental unfairness such as to violate federal due process law."); *Pearl v. Cason*, 219 F. Supp. 2d 820, 830 (E.D. Mich. 2002) (Edmunds, J.) ("[A] challenge to the admission of a gruesome photograph does not present a question of constitutional magnitude.") *cf. Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005). Accordingly, this Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.     *Ineffective Assistance of Counsel (Ground 4)*

Petitioner next alleges that he was unconstitutionally denied the assistance of effective counsel. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.     *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudices the defense. *Id.* at 687. These two components are mixed questions of law and fact. *See id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

2. *Analysis*

Petitioner raises numerous challenges to the adequacy of his trial counsel. Most of petitioner's claims can be addressed briefly, since the other portions of this Report show that the underlying arguments supporting petitioner's ineffective assistance claims are without merit. For example, petitioner asserts that his trial counsel was ineffective for failure to move for production of the DNA test results. However, this claim is without merit, *see infra* part H.1.b. Such a motion would have been denied; thus, counsel was not ineffective for failing to make it. Likewise, petitioner's claim that his counsel was ineffective for failing to investigate and object to the introduction of prejudicial photographs admitted into evidence is without merit, *see supra* part F.2. Likewise, there is no merit to petitioner's claims regarding counsel's failure to seek discovery of the victim's drug test results, *see infra* part H.1.b, and videotapes of police interviews, *see infra* part H.1.b.

With respect to the claims identified by petitioner which are not resolved by analyses in

other portions of this Report, the Court should conclude that these claims are also without merit. Petitioner contends that counsel was ineffective for failing to call Nurse Jones, who took the photographs, as a witness in an attempt to impeach the victim. However, counsel established that the cause of the victim's injuries could not be ascertained with medical certainty, thus impeaching the victim's assertion that petitioner had caused the injuries. Furthermore, defense counsel repeatedly impeached the credibility of the victim's testimony on the basis of her drug use. Counsel, therefore, did not require the testimony of Nurse Jones to impeach the victim. As noted above, a strong presumption exists that counsel gave petitioner adequate assistance, exercising reasonable professional judgment. *See Strickland*, 466 U.S. at 690. Petitioner offers no evidence to rebut this presumption, thus failing the first prong of the *Strickland* test.

Even if this Court were to find that counsel erred by not seeking the testimony of Nurse Jones, petitioner fails to show that he was prejudiced. Given the totality of evidence admitted to impeach the victim, there is not a reasonable probability that the jury would have rendered a different verdict had Nurse Jones testified. Thus, the omission of Nurse Jones's testimony did not prejudice the petitioner. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his claim that counsel was ineffective for failing to seek the testimony of Nurse Jones.

Petitioner also contends that counsel was ineffective for failing to seek timely discovery of the victim's telephone records. Petitioner argues that if he had known of the phone conversation between the victim and her mother, which occurred during the time frame of the offenses, he would have deposed the victim's mother and called her as a witness to testify that the victim did not tell her mother that she had been raped just prior to the phone conversation. Further, the victim's mother would testify that the victim did not sound distressed on the phone.

There is no merit to this claim. As noted above, petitioner bears the burden of showing counsel's error was so egregious that petitioner was effectively denied the right to counsel protected by the Sixth Amendment. *See id.* at 698. In other words, petitioner must show that counsel was not acting as counsel when he failed to seek discovery of the victim's telephone records. Petitioner fails to make the requisite showing. He offers no evidence that counsel did not seek discovery of the phone records. On the contrary, the record shows that counsel had attempted discovery of the phone records, but the phone company did not comply in a timely manner. *See* Trial Tr.. dated Feb. 10, 2006, at 3-4. Thus, counsel was not at fault for the delayed production of the victim's phone records. Accordingly, counsel acted within the range of reasonable professional assistance under the performance prong of *Strickland*.

Even if the Court concluded that counsel was deficient in delaying discovery of the phone records, petitioner was not prejudiced. Assuming that petitioner's unsupported and speculative allegations that the victim's mother would have testified on his behalf are true, the victim testified that she was afraid to tell anyone she was in trouble while the petitioner was near. She stated that she was concerned that petitioner might injure her further if she asked for help. Further, the victim testified that after the initial offense she was in a state of confusion and didn't know what to do. In considering the totality of evidence, no rational trier of fact would find a reasonable doubt that the offense occurred simply because the victim did not sound distressed and did not inform her mother of the incident while she still felt threatened by petitioner. Thus, petitioner's claim fails the second prong of the *Strickland* test. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his claim that counsel was ineffective for failing to seek timely discovery of the victim's telephone records.

In sum, the Court should conclude that petitioner is not entitled to habeas relief on his

claims of ineffective counsel.  Counsel rendered reasonable professional assistance to petitioner without the testimony of Nurse Jones, and counsel's efforts to discover the victim's telephone records were frustrated by the phone company's delay.  Furthermore, even if the Court finds that counsel was deficient, petitioner was prejudiced neither by the omission of Nurse Jones's testimony nor by the late production of the victim's phone records.

H.    *Prosecutorial Misconduct Claims (Grounds 5A – 5C)*

Petitioner finally raises several prosecutorial misconduct claims.  Specifically, petitioner contends that the prosecutor suppressed evidence, and made improper comments at trial.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Suppression of Evidence (Grounds 5A & 5B)*

Petitioner first contends that the prosecutor suppressed evidence potentially favorable to the petitioner.  Specifically, he alleges that the following evidence was suppressed: (1) petitioner's DNA test results; and (2) other exculpatory evidence, such as the victim's telephone records, the victim's drug test results, and police videotapes of witness interviews.

*a. Clearly Established Law*

The Due Process Clause requires the state to disclose exculpatory evidence to the defense.  *See Brady v. Maryland*, 373 U.S. 83 (1963).  "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  Thus, in order to establish a *Brady* claim, petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to the petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the

evidence was material to the question of petitioner's guilt. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *Luton v. Grandison*, 44 F.3d 626, 628-29 (8th Cir. 1994); *see also*, *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972). Petitioner bears the burden of establishing each of these three elements. *See Carter*, 218 F.3d at 601. Further, although *Brady* requires disclosure of exculpatory evidence, it is well established that "*Brady* . . . does not require the government to create exculpatory material that does not exist." *United States v. Sukumolachan*, 610 F.2d 685, 687 (9th Cir. 1980); *see also*, *Richards v. Solem*, 693 F.2d 760, 766 (8th Cir. 1982) ("Although the state has a duty to disclose evidence, it does not have a duty to create evidence.").

### b. Analysis

With respect to the petitioner's DNA test results, there is no evidence that such results were suppressed. On the contrary, the test results were simply not available at the time of trial. Moreover, the test results were not material to the issues posed at trial. In addition to the victim identifying petitioner as her attacker, Officer Plaunt testified that petitioner gave a statement to the police in which petitioner admitted having sexual intercourse with the victim several times during the time of the incident, thus rendering a DNA test unnecessary to establish identity. The Supreme Court has established that, in a criminal prosecution, the government "do[es] not have a constitutional duty to perform any particular test." *Arizona v. Youngblood*, 488 U.S. 51, 59 (1988).

With respect to the victim's telephone records, there is no evidence that they were suppressed. On the contrary, the victim's telephone records were introduced into evidence by the prosecutor. During cross-examination, petitioner questioned Detective Miller concerning the incoming and outgoing calls on the phone record which occurred during the time of the offenses.

Moreover, during closing argument, defense counsel asked the jury specifically to consider the victim's telephone records while in deliberations, arguing that the victim's use of her cell phone during the time frame of the incident indicated that the sexual contact was consensual because petitioner did not prohibit the victim from using her phone. Trial Tr., dated Feb. 15, 2006, at 41.

With respect to the victim's drug test, the test results were unnecessary to establish that the victim was a drug user at the time of the offenses. The victim testified at trial that she had used cocaine the evening before the incident; thus, the results of her drug test would merely have corroborated what the victim herself stated. Further, petitioner cannot show that he was prejudiced by the exclusion of the victim's drug test results. The jury was aware of the victim's drug use, and the court gave appropriate instructions concerning witness credibility. *See supra* part D.2. Even assuming the drug test results were necessary to establish the victim's credibility, the test results were not material to the question of petitioner's guilt; thus, failing the third prong of the *Brady* test.

With respect to the police videotapes of witness interviews, petitioner asserts these videotapes would have shown inconsistencies between statements witnesses made to the police and testimony given at trial. However, petitioner merely asserts that the police made such videotapes while taking witness statements; petitioner offers no evidence that such videotapes exist, or ever existed. As noted above, it is well established that under *Brady* the government has no duty to produce nonexistent exculpatory evidence. *See Sukumolachan*, 610 F.2d at 687; *see also*, *Richards*, 693 F.2d at 766.

In sum, the petitioner's DNA test results were not available at the time of trial; the victim's phone records were admitted into evidence; the victim's drug use was established without obtaining her drug test results; and no evidence exists of videotaped witness interviews.

Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his suppression of evidence claims.

### 2.    Comments (Ground 5C)

Petitioner finally contends that the prosecutor committed misconduct by making prejudicial comments during closing argument.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

### a. Clearly Established Law

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, the court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted).  In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (internal quotation omitted).

### b. Analysis

Petitioner contends that the prosecutor committed misconduct by referring to petitioner

as a drug dealer during closing argument.  At trial, the victim testified that petitioner had supplied her and others with cocaine, Trial Tr., dated Feb. 9, 2006, at 67, thereby identifying petitioner as a source of drugs.  Moreover, this testimony was introduced into evidence through the defense's cross-examination and not by the prosecution.  Thus, the prosecutor's reference to the petitioner as a drug dealer was factually supported through testimony prompted by the defense.  Further, the prosecutor's reference to the petitioner as a drug dealer during closing argument was not a comment on the petitioner's character.  The prosecutor was establishing why the victim was hesitant to go to the police after the incident.  The prosecution's reference to the petitioner as a drug dealer was isolated, and factually supported by trial testimony.  Accordingly, this Court should conclude that petitioner is not entitled to habeas relief on his claim of prosecutorial misconduct.

I.      *Recommendation Regarding Certificate of Appealability*

     1.      *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional

right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.      *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should conclude that petitioner is not entitled to a certificate of appealability. Taken as a whole, the omission of an "addict-informant" instruction did not render the proceeding fundamentally unfair. Furthermore, it is not reasonably debatable that a rational trier of fact could have found petitioner guilty beyond a reasonable doubt based on the admitted evidence. Thus, the conclusion that the evidence was sufficient to sustain a guilty verdict is not reasonably debatable. Moreover, it is not reasonably debatable that defense counsel's alleged omissions did not constitute deficient performance and were not prejudicial to petitioner. Thus, the conclusion that counsel was effective under the *Strickland* standard is not reasonably debatable. Nor is it reasonably debatable that the prosecutor did not suppress evidence favorable to the petitioner, or that the prosecutor improperly commented on evidence that petitioner was a drug dealer. Finally, it is clear under established Supreme Court precedent that petitioner's claim relative to the admission of prejudicial evidence does not warrant habeas relief; thus, the resolution of this claim is not reasonably debatable. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

J.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives _____
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 7/20/10

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on July 20, 2010.

s/Eddrey Butts
Case Manager